IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **WAYNE MANSFIELD**, | Case No. 1:10 CV 676 |
| Petitioner, | Judge John R. Adams |
| v. | REPORT AND RECOMMENDATION |
| **WARDEN OF MANSFIELD CORRECTIONAL INSTITUTION**, | |
| Respondent. | Magistrate Judge James R. Knepp II |

**Introduction**

Petitioner Wayne Mansfield, a prisoner in state custody, filed a Petition seeking a writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1). Respondent, Warden Bennie Kelly, filed a Return of Writ (Doc. 7) with exhibits (Docs. 7-1 – 7-6). Petitioner filed a motion to expand the record, seeking Respondent to file three psychiatric evaluations examining Petitioner's competency. (Doc. 9). That motion was granted (Doc. 10), and Respondent filed the psychiatric records under seal (Doc. 12). Petitioner then filed a Traverse (Doc. 14), to which Respondent filed a permitted Sur-Reply (Doc. 18).

The district court has jurisdiction over the Petition under § 2254(a). This matter has been referred to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2(b)(2). For the reasons discussed below, the undersigned recommends the Petition be denied.

**Background**

*Factual Background*

For purposes of habeas corpus review of state court decisions, findings of facts made by a

state court are presumed to be correct and can only be contravened if the habeas petitioner can show, by clear and convincing evidence, that the state court's factual findings were erroneous. 28 U.S.C. § 2254(e)(1); *Mitzel v. Tate*, 267 F.3d 524, 530 (6th Cir. 2001). This presumption of correctness applies even to factual findings made by a state court of appeals based on the state trial record. *Id.* Petitioner has not presented such clear and convincing evidence in his Petition to contravene the state court of appeal's recitation of the facts:

> {¶2} From the late 1990s through the time of his arrest, [Petitioner] lived in Madison, Ohio. [Petitioner] worked for a real estate company, and his job was to clean out houses and yards.
>
> {¶3} In October 2005, victim #1 was an 11-year-old boy. [footnote omitted]. Victim #1 helped [Petitioner] clean up some yards. After they had finished working, victim #1 and [Petitioner] returned to [Petitioner's] home. At that time, [Petitioner] showed victim #1 pornographic pictures and a dildo. [Petitioner] told victim #1 that an individual in one of the pictures was victim #2, a boy who lived across the street from [Petitioner]. [Petitioner] offered to perform oral sex on victim #1. He told victim #1 that "men's saliva makes the dick get bigger." Victim #1 declined [Petitioner's] advances and reported [Petitioner's] conduct to his mother. Victim #1's mother contacted the Madison Police Department.
>
> {¶4} Victim #2 lived across the street from [Petitioner]. Victim #2 was 12 to 15 years old during the relevant times of this case. On various occasions, [Petitioner] would baby-sit victim #2 and would drive him to or from school. Also, [Petitioner] took victim #2 fishing and hunting. When victim #2 was 14, he began to help [Petitioner] clean out houses, and he was paid for this work. [Petitioner] often showed victim #2 Playboy magazines and videos when victim #2 was at his home. In addition [Petitioner] asked to perform oral sex on victim #2 on several occasions. Victim #2 rejected most of [Petitioner's] requests. However, victim #2 testified that [Petitioner] performed oral sex on him a total of four to six times. According to victim #2, he was 12 years old the first time [Petitioner] performed oral sex on him. Also, on one occasion, [Petitioner] forced victim #2 to touch [Petitioner's] penis with victim #2's hand.
>
> {¶5} After the incident involving victim #1 was reported to the police, victim #2 was asked to come to the police station to be interviewed. Officer William Hodakievic and Detective Timothy Doyle of the Madison Police Department questioned victim #2 about sexual activity that may have occurred between himself and [Petitioner]. Initially, victim #2 denied any sexual activity occurred. However,

> Officer Hodakievic left the room, and Detective Doyle interviewed victim #2 alone. Victim #2 knew Detective Doyle from a mentoring program at victim #2's school. Victim #2 told Detective Doyle that [Petitioner] had performed oral sex on him.
>
> {¶6} At Detective Doyle's request and with his parents' permission, victim #2 agreed to wear a wire to record conversations between himself and [Petitioner]. Victim #2 went into [Petitioner's] home and engaged in general conversation with him, talking about various topics, including [Petitioner's] birthday party. At one point, [Petitioner] went to get something out of the refrigerator. As he passed victim #2, [Petitioner] grabbed victim #2 in his groin area. Victim #2 responded by telling [Petitioner], "no dude, that's gay."
>
> {¶7} Based upon the information provided to him by victim #1 and victim #2, Detective Doyle obtained a search warrant for [Petitioner's] home. Detective Doyle executed the search warrant at 4:42 p.m. on October 22, 2005. Detective Doyle arrested [Petitioner], removed him from his home, and placed him in handcuffs. [Petitioner] was cooperative. Detective Doyle removed the handcuffs and placed [Petitioner] in the front seat of his unmarked police car. Detective Doyle informed [Petitioner] of his *Miranda* rights by reading them with [Petitioner] from a preprinted witness statement form. [Petitioner] remained in Detective Doyle's car while his home was being searched. During this time, [Petitioner] provide two written witness statements while he was in the car with Detective Doyle. He gave one additional written statement after the search was concluded from inside the house at the kitchen table. In his statements, [Petitioner] admitted to having oral sex with victim #2.

*Ohio v. Mansfield*, 2008 Ohio 3989, ¶¶ 2-7 (Ohio App. Ct. 2008) (Ex. 24, Doc. 7-2, at 191-93)

### *State Court Proceedings*

The state appeals court summarized the trial court proceedings (which neither party here disputes) as follows:

> {¶ 8} [Petitioner] was indicted on six counts. The first three counts of the indictment relate to [Petitioner's] interaction with victim #1. These counts were one count of importuning, in violation of R.C. 2907.07(A) and a fourth-degree felony, and two counts of disseminating matter harmful to juveniles, in violation of R.C. 2907.31(A)(1) and fourth-degree felonies. The last three counts of the indictment pertained to [Petitioner's] interaction with victim #2. These counts were one count of rape, in violation of R.C. 2907.02(A)(1)(b) and a first-degree felony, and two counts of unlawful sexual conduct with a minor, in violation of R.C. 2907.04(A) and third-degree felonies.
>
> {¶ 9} Initially, [Petitioner] pled not guilty to these charges. However, on

December 13, 2005, [Petitioner] pled guilty to one count of importuning, one count of rape, and one count of unlawful sexual conduct with a minor. Upon recommendation of the state, the remaining counts were dismissed. The trial court deferred sentencing and referred the matter to the probation department for completion of a presentence investigation ("PSI") report.

{¶ 10} Prior to being sentenced, [Petitioner] filed a motion to withdraw his guilty plea. He also filed a motion for new counsel. Following a hearing on [Petitioner's] motions, the trial court granted both his motion to withdraw his guilty plea and his motion for new counsel.

{¶ 11} [Petitioner] filed a motion to suppress the evidence obtained as a result of his arrest. [Petitioner] argued his statements given to the police were obtained in violation of his *Miranda* rights. The state filed a response in opposition to [Petitioner's] motion to suppress. On March 6, 2006, the trial court held a hearing on [Petitioner's] motion. Detective Doyle and victim #2's father testified for the state. The trial court denied [Petitioner's] motion to suppress.

{¶ 12} In April 2006, defense counsel filed a motion for a competency evaluation to determine if [Petitioner] was competent to stand trial. The trial court referred [Petitioner] to the Northcoast Behavioral Healthcare System ("Northcoast") for a competency evaluation. In August 2006, a hearing was held on [Petitioner's] competence to stand trial. The parties stipulated to the admission of a report from Northcoast, which concluded that, in light of his current mental state, [Petitioner] was not competent to stand trial, as he was not capable of understanding the charges against him or assisting with his defense. The trial court found [Petitioner] not competent to stand trial and committed him to Northcoast to restore his competency.

{¶ 13} In December 2006, another hearing was held on [Petitioner's] competence to stand trial. The parties stipulated to the admission of a new report from Northcoast, which concluded that, at that time, [Petitioner] was capable of understanding the charges against him and assisting with his defense. The trial court found [Petitioner] competent to stand trial.

{¶ 14} Upon [Petitioner's] motion, the trial court severed the counts of the indictment for purposes of trial. The trial court ordered that the charges relating to victim #1, counts one, two, and three, would be tried separately from the charges relating to victim #2, counts four, five, and six.

{¶ 15} The matter proceeded to a jury trial on counts four, five, and six. Detective Doyle, Officer Hodakievic, victim #2, and victim #2's parents testified for the state. Following the state's case-in-chief, [Petitioner] moved for acquittal pursuant to Crim.R. 29. The trial court overruled [Petitioner's] motion for acquittal. In addition, [Petitioner] renewed his motion to suppress to preserve the issue for

appeal. The trial court also overruled this motion. [Petitioner] did not present any evidence. The jury found [Petitioner] guilty on counts four, five, and six.

{¶ 16} Following the jury trial on counts four, five, and six, [Petitioner] withdrew his not guilty plea in relation to counts one, two, and three and pled guilty to those charges.

{¶ 17} The trial court sentenced [Petitioner] to a nine-year prison term for his rape conviction and four-year prison terms on each of his unlawful sexual conduct with a minor convictions. The trial court ordered these sentences be served consecutively to each other. The trial court sentenced [Petitioner] to 18-month prison terms for his convictions for importuning and disseminating matter harmful to juveniles. The three 18-month sentences were ordered to be served concurrently to each other, but consecutively to the other sentences imposed by the court. Thus, [Petitioner's] aggregate sentence was 18.5 years. In addition, the trial court adjudicated [Petitioner] a sexual predator.

*Ohio v. Mansfield*, 2008 Ohio 3989, ¶¶ 8-17 (Ohio App. Ct. 2008) (Ex. 24, Doc. 7-2, at 193-95).

Petitioner, represented by the Lake County Public Defender, timely appealed. (Ex. 21, Doc. 7-2, at 79-83). Relevant to the instant proceeding, Petitioner's ten grounds on appeal included the following assignment of error: "The trial court erred when it denied Defendant-Appellant's Motion to Suppress in violation of his Due Process Rights guaranteed under the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution and Section 10, Article 1 of the Ohio Constitution." (Ex. 22, Doc. 7-2, at 105-09). The State filed a response brief. (Ex. 23, Doc. 7-2, at 141). The appellate court issued an opinion and judgment entry on July 28, 2008, overruling all ten of Petitioner's assignments of error and affirming the judgment of the trial court. *Ohio v. Mansfield*, 2008 Ohio 3989 (Ohio App. Ct. 2008) (Ex. 24, Doc. 7-2, at 190-212).

Petitioner then filed a timely appeal to the Ohio Supreme Court, still represented by the Lake County Public Defender. (Ex. 25, Doc. 7-2, at 214-15). In his memorandum in support of jurisdiction, he presented six propositions of law, the only one relevant to the instant proceeding being:

> The trial court errs when it denies the suppression of statements made by the Defendant where the Defendant's cognitive abilities are apparent in his statement to the police and where the court is later made aware of the Defendant's significant cognitive limitations, [child-like] reading level and comprehension abilities, thus establishing the Defendant's inability to knowingly, voluntarily and intelligently wave his *Miranda* rights.

(Ex. 26, Doc. 7-2, at 217). The state filed a brief opposing jurisdiction. (Ex. 27, Doc. 7-2, at 258).

On December 31, 2008, the Ohio Supreme Court denied leave to appeal and dismissed the appeal as not involving any substantial constitutional question. (Ex. 28, Doc. 7-2, at 275).

*Federal Habeas Corpus*

Petitioner filed his Petition seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on March 31, 2010. He asserts the following sole ground for relief:

> **GROUND ONE:** THE TRIAL COURT VIOLATED [PETITIONER'S] RIGHTS UNDER THE FIFTH AMENDMENT WHEN IT DENIED HIS SUPPRESSION MOTION, EVEN THOUGH [PETITIONER'S] COGNITIVE IMPAIRMENTS PRECLUDED HIM FROM KNOWINGLY, INTELLIGENTLY, AND VOLUNTARILY WAIVING HIS *MIRANDA* RIGHTS.
>
> **Supporting FACTS:** Madison Township Police Detective Timothy Doyle, investigating allegations of sexual misconduct against [Petitioner], procured a Miranda-rights waiver from [Petitioner], and then obtained inculpating statements while interrogating [Petitioner]. After filing a suppression motion concerning those statements, [Petitioner] demonstrated to the trial court that at the time he made his uncounseled statements to police, he had severe learning problems, dyslexia, serious cognitive dysfunction and limitations, a second-grade reading level, and the comprehension abilities of a four-year-old. The state courts did not give proper weight to these factors, and unreasonably concluded that [Petitioner] had voluntarily waived his *Miranda* rights.

(Doc. 1, at 5).

## Discussion

Petitioner's single ground is timely filed, exhausted, and not procedurally defaulted. The Court will therefore examine its merits.

*Standard of Review*

When the basis for a federal habeas claim has been previously adjudicated by the state courts, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) provides the writ shall not issue unless the state decision "was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). A federal court may grant habeas relief if the state court arrives at a decision opposite to that reached by the Supreme Court of the United States on a question of law, or if the state court decides a case differently than did the Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). The appropriate measure of whether or not a state court decision unreasonably applied clearly established federal law is whether that state adjudication was "objectively unreasonable" and not merely erroneous or incorrect. *Williams*, 529 U.S. at 409-11; *see also Machacek v. Hofbauer*, 213 F.3d 947, 953 (6th Cir. 2000).

"As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 131 S. Ct. 770, 786-87 (2011).

*Review of* **Miranda** *Rights Waiver*

Under *Miranda v. Arizona*, 384 U.S. 436 (1966), the Fifth Amendment privilege against self-incrimination protects individuals from compulsion during custodial interrogation. *Id.* at 461. Any waiver of this right must be made "knowingly, voluntarily, and intelligently" for the statements to be admissible. *Pennsylvania v. Muniz*, 496 U.S. 582, 589 (1990). Courts must engage in a two-part inquiry:

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception.  Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.  Only if the totality of the circumstances surrounding the interrogation reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda rights have been waived.

*Moran v. Burbine*, 475 U.S. 412, 421 (1986) (internal quotation marks omitted).

When examining the totality of circumstances surrounding the interrogation, courts have looked to the following factors: police coercion; the length of the interrogation, its location, and its continuity; the defendant's maturity, education, physical condition, and mental health; and the failure of police to advise the defendant of his rights to remain silent and have counsel present during custodial interrogation.  *Withrow v. Williams*, 507 U.S. 680, 693-94 (1993).

"The relevant question is not whether the 'criminal suspect [knew] and [understood] every possible consequence of a waiver of the Fifth Amendment privilege,' but rather whether the 'suspect [knew] that he [could] choose not to talk to law enforcement officers, to talk only with counsel present, or to discontinue talking at any time.'" *Garner v. Mitchell*, 557 F.3d 257, 261 (6th Cir. 2009) (*en banc*) (quoting *Colorado v. Spring*, 479 U.S. 564, 574 (1987)).  "[T]he question is not whether if [the defendant] were more intelligent, informed, balanced, and so forth he would not have raised his *Miranda* rights, but whether the police believed he understood their explanation of those rights; more precisely, whether a reasonable state court judge could have found that the police believed this." *Garner*, 557 F.3d at 262 (quoting with approval *Rice v. Cooper*, 148 F.3d 747, 750-51 (7th Cir. 1998)).  "The underlying police-regulatory purpose of *Miranda* compels that these circumstances be examined, in their totality, *primarily from the perspective of the police*." *Garner*, 557 F.3d at 263 (emphasis added).

8

*Petitioner's Motions to Suppress*

Petitioner does not argue that police coerced his incriminating statements, but rather argues he lacked the "full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran*, 475 U.S. at 421. Petitioner twice raised this concern at the trial court level through motions to suppress. The trial court had more evidence about Petitioner's ability to comprehend when Petitioner renewed his motion, and so this Court will analyze the two Motions separately.

Petitioner first filed his motion to suppress incriminating statements he made to Detective Doyle on February 6, 2006. (Ex. 8, Doc. 7-2, at 17-23). The court held a hearing to address the motion, where Detective Doyle and the father of victim #2 testified on behalf of the state. Petitioner did not present any witnesses or other evidence, instead merely cross-examining the state's witnesses. The motion and the hearing both occurred before Petitioner was found incompetent to stand trial and before the psychiatric reports leading to that determination were made. Therefore, those reports were not available to the judge when he decided Petitioner's initial suppression motion.

In deciding the motion, the trial court first accurately summarized the hearing testimony (Ex. 10, Doc. 7-2, at 31-33). The court then wrote:

> Contrary to [Petitioner's] assertions, the evidence clearly shows that the officer informed [Petitioner] of these rights and provided [Petitioner] a written copy of his rights and that [Petitioner] waived these rights in writing. His handwriting is distinctly different than the interviewing officer's. There is no evidence he ever told the officer he was unable to read or write. His written statements and answers, while showing poor grammar and spelling, were reasonably relevant and responsive. He never asked for help in filling out the forms. While the officer was aware that [Petitioner] appeared to have lesser intelligence, [Petitioner's] poor writing ability was not unusual. The officer was unaware that [Petitioner] had been in special education classes as a child. The officer found [Petitioner] to be articulate and able to convey a train of thought. In a four to five hour period, he was given his *Miranda* rights three times and each time he waived his rights orally and in writing.

9

> Aside from being handcuffed momentarily, there is no evidence of physical deprivation. The officer never raised his voice, never told [Petitioner] he was in a lot of trouble or promised him anything. There is a complete absence of any evidence that the officer was overbearing or intimidating. [Petitioner] told the officer about his sexual abuse as a child. [Petitioner] did not display any unusual behavior, showed no impairment with drugs or alcohol, and showed no signs of intellectual impairment. While there is no evidence that [Petitioner] had any prior experience with the criminal justice system, he was middle aged with some experience in the world and was living independently. The interviews were relatively short and in an informal environment. [Petitioner] never terminated the interview nor asked for a lawyer. He fully cooperated with the interviewing officer and with the search of his house and garage. When the officer found that [Petitioner's] written statements were vague or uninformative, he used a question and answer format to help make [Petitioner] more candid. This is not impermissible. Also not impermissible was the officer's inferring the existence of a tape that never existed that showed sexual acts.
> 
> The totality of the evidence shows that [Petitioner] was not physically deprived, mistreated, threatened or improperly induced to make any statement. In the absence of police misconduct, [Petitioner's] poor educational level did not undercut the voluntariness of his statements. Contrary to [Petitioner's] assertion, he does have a limited ability to read and write. There is simply no evidence that the officer wrote out [Petitioner's] statements or answers. There is no evidence he told the officers that he did not understand his constitutional rights. His three express written waivers of his rights are strong proof of the validity of his waivers. The court finds that [Petitioner's] waiver of his rights was knowing, intelligent and voluntary.

(Ex. 10, Doc. 7-2, at 33-34). After reviewing the hearing transcript and Petitioner's brief in support of his motion to suppress, the undersigned can find no fault with this analysis of the totality of Petitioner's circumstances at the time of the hearing. The trial court did not take into account the competency evaluations because they did not yet exist. The evidence which was available at the time – essentially the testimony of Detective Doyle, uncontested by any evidence supplied by Petitioner – painted a picture of a Petitioner who, while perhaps of below average intelligence, from the perspective of the police at the scene was nonetheless capable of, and appeared to have, understood his rights and what their waiver meant. *See Garner*, 557 F.3d at 263 (totality of circumstances must be examined primarily from the perspective of the police).

Petitioner now argues, however, that his renewal of his motion to suppress at the close of the

10

prosecution's case should have been granted because the trial court had more information, to wit the competency evaluations and the finding that Petitioner was for a time incompetent to stand trial. The court of appeals addressed this argument in the following manner:

> {31} [Petitioner] also argues that the trial court erred by failing to grant his renewed motion to suppress made at the trial. He contends that the trial court should have reconsidered his motion in light of the evidence presented at the initial competency evaluation that he was not able to understand the charges against him or assist with his defense. [Petitioner] argues that if he was not competent to stand trial in August 2006, then he was not competent to waive his *Miranda* rights in October 2005.
> {32} We note there is no medical evidence in the record regarding [Petitioner's] level of mental competence in October 2005. We cannot say, as a matter of law, that the trial court erred by failing to consider evidence that [Petitioner] was not competent nine months after the statements were given. This is especially true in light of the fact that [Petitioner] was declared competent in December 2006. Thus, there is evidence in the record that [Petitioner's] level of competence has fluctuated over time.
> {33} Finally, we note there is a judgment entry in the record, filed on June 20, 2007, which granted [Petitioner's] motion for public payment of an expert witness. This expert witness was to "consider the issue of the reliability or credibility of defendant's confession." Thus, the trial court knew that [Petitioner] had an expert witness evaluate his statements to consider whether he was competent to confess. Presumably, had this expert's findings been favorable to [Petitioner], [Petitioner's] trial counsel would have moved the trial court to introduce the expert's findings and asked the trial court to reconsider his motion to suppress in light of the new evidence.
> {34} In light of the totality of the circumstances, the trial court did not err by denying [Petitioner's] motion to suppress.

*Ohio v. Mansfield*, 2008 Ohio 3989, ¶¶ 31-34 (Ohio App. Ct. 2008) (Ex. 24, Doc. 7-2, at 198-99).

It should be noted that when Petitioner's counsel renewed the motion, he did not mention the competency evaluations at all, instead saying: "For purposes of the record only, I'm renewing my motion to suppress at this point just to preserve the issue for appeal. I believe the Eleventh District indicates we should do it upon the State resting. The Court already heard the evidence for

11

purposes of appeal." (Ex. 31, Doc. 7-5, at 76). The trial court then simply stated: "Motion to suppress again is overruled." (*Id.*).

Regardless, even had Petitioner's counsel renewed the motion explicitly in light of the competency evidence, the denial thereof would not be contrary to, or involving an unreasonable application of, clearly established federal law. In order to hold a defendant competent to stand trial, a court inquires "whether the defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and has a rational as well as factual understanding of the proceedings against him." *Godinez v. Moran*, 509 U.S. 389, 396 (1993) (quoting *Dusky v. U.S.*, 362 U.S. 402 (1960)) (internal quotation marks omitted). Whereas to have the requisite comprehension to waive one's *Miranda* rights, a person must simply "[know] that he [could] choose not to talk to law enforcement officers, to talk only with counsel present, or to discontinue talking at any time." *Garner*, 557 F.3d at 261 (internal quotation marks omitted). The standard for competency to stand trial is higher, and more demanding, than that of being fully aware of the nature of one's *Miranda* rights and the consequences of waiving them. *See Adams v. Haeberlin*, 404 F. App'x 11, 14-15 (6th Cir. 2010) ("[T]here is no reason to believe that the competency standard for waiving *Miranda* rights is higher than the competency standard for standing trial.") (citing *Godinez*, 509 U.S. at 399). It therefore does not necessarily follow that a person found incompetent to stand trial would always lack the requisite comprehension to waive his *Miranda* rights.

This is not to say the findings in Petitioner's competency evaluations are completely irrelevant. Petitioner particularly notes that the competency evaluations found he "1) has an IQ in the mid-50s to mid-60s; 2) cannot read better than a second-grade child; and 3) is able to understand spoken words as well as a 4- or 5-year old". (Doc. 14, at 10). These findings however, do not

directly rebut the trial court's findings that, *at the time* when Petitioner was questioned in October 2005, his "written statements and answers, while showing poor grammar and spelling, were reasonably relevant and responsive", he "showed no signs of intellectual impairment", and his "poor educational level did not undercut the voluntariness of his statements". (Ex. 10, Doc. 7-2, at 33-34). Petitioner's outward expression would not, and did not, alarm Detective Doyle that Petitioner was not understanding his rights or their waiver.

It is Petitioner's burden to establish that, under the totality of the circumstances, he did not knowingly and intelligently waive his *Miranda* rights. *See Clark v. Mitchell*, 425 F.3d 270, 283 (6th Cir. 2005). Moreover, the state court's factual finding that Petitioner understood what was being said and asked of him is presumed to be correct unless Petitioner demonstrates otherwise by clear and convincing evidence. *Adams*, 404 F. App'x at 14 (citing 28 U.S.C. 2254(e)(1)). Petitioner has not provided evidence showing that he appeared to the police officers at the time of his *Miranda* waiver that he was incapable of understanding his rights and what foregoing them meant. As in *Garner*, here the Petitioner's "conduct, speech, and appearance at the time of interrogation indicated that his waiver was knowing and intelligent, notwithstanding his diminished mental capacity." *Garner*, 557 F.3d at 265. Petitioner has not met his burden.

Accordingly, Petitioner has not shown that the denial of his motion to suppress "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 131 S. Ct. at 787. Therefore, his Petition must be denied.

## Conclusion and Recommendation

Following review, the undersigned recommends the court find Petitioner's sole ground

without merit. There has been no demonstrated need for an evidentiary hearing. The Petition should be denied.

s/James R. Knepp II<br>United States Magistrate Judge

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).